**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Chuck Burdine<br>975 Sand Creek Rd.<br>Drain, Oregon 97435<br><br>*Plaintiff,*<br><br>   **v.**<br><br>Kenny Burdine<br>422 Lockwood Ave.<br>Hamilton, OH 45011<br><br>*and*<br><br>Joann Burdine<br>422 Lockwood Ave.<br>Hamilton, OH 45011<br><br>*and*<br><br>Tonja Burdine<br>422 Lockwood Ave.<br>Hamilton, OH 45011<br><br>         Also serve at: 30 Lawson Avenue<br>                              Hamilton, OH 45013<br><br>*and*<br><br>IAM National Pension Fund<br>99 M. St. SE, Suite 600, Washington, DC 20003;<br>Service to: Ryk Tierney, CEBS, Executive Director, IAM National Pension Fund, 1300 Connecticut Ave, NW, Ste. 300, Washington, DC 20036-1711<br><br>*Defendants.* | Case No. 1:23-cv-3772 (TNM)<br><br>Jury Trial Requested |
| IAM NATIONAL PENSION FUND,<br><br>      Counterclaim Plaintiff<br>      And Crossclaim Plaintiff, | |

v.

CHUCK BURDINE,

    Counterclaim Defendant

and

KENNY BURDINE, JOANN BURDINE, and TONJA BURDINE,

    Crossclaim Defendants

## PLAINTIFF CHUCK BURDINE'S AMENDED VERIFIED COMPLAINT

Plaintiff Chuck Burdine ("Chuck"), for his Amended Complaint for Declaratory and Other Relief against Defendants Kenny Burdine ("Kenny"), Joann Burdine ("Joann"), Tonja Burdine ("Tonja"), and the IAM National Pension Fund (the "Pension Fund"), states:

## Nature of the Action

1. Chuck is the surviving son of Charles Burdine ("Charles"), who passed away on January 14, 2022.

2. Until just over a month before Charles's passing, Chuck was named as a beneficiary with respect to Charles's funds administered by the Pension Fund.

3. Prior to Charles's passing, he had suffered a stroke. He lived, variously, in nursing homes, and with Kenny (Charles's brother), Joann (Kenny's wife), and Tonja (the daughter of Kenny and Joann) (collectively, "Individual Defendants") in a house where he was dependent on his caregivers.

4. On December 10, 2021—just five days *after* Kenny observed, in writing, that "Charles is bad sick ... he can't answer his phone because I got him on pain medicine … he

won't answer it because he's out 90% of the time and he don't know what he's saying because of the medicines"—the beneficiary of Charles's Pension Fund was changed to Tonja alone. No one informed Chuck that this change was to occur.

5. Upon information and belief, Charles lacked the requisite mental capacity to make such a change in beneficiary at the time the change was made.

6. Individual Defendants' status as caregivers further creates a presumption that the purported change in beneficiary—eliminating Chuck as a beneficiary, and purporting to direct all payments to Kenny's and Joann's own daughter—resulted from undue influence.

7. Upon information and belief, Individual Defendants abused Charles's dependence on them, and abused their position of trust as caregivers, to isolate Charles and to pressure him into changing/to facilitate changing the beneficiary of his Pension Fund roughly a month before his passing.

8. Indeed, it was Chuck's understanding from Charles that Charles intended that Chuck be the sole beneficiary. Even before the December 2021 conduct—through which the Individual Defendants wholly eliminated Chuck from the beneficiary designations—the previous beneficiary designation form purportedly executed by Charles in 2020 had anomalous handwriting. Specifically, while Chuck's name was written in Charles's handwriting, Kenny's name also appears on the form, but in noticeably different handwriting.

9. Upon information and belief, this designation of Kenny in 2020 was likewise secured through a fraudulent forgery by one of the Individual Defendants writing Kenny's name themselves. Because this earlier designation of Kenny was also illegitimate, Chuck should be named as sole beneficiary of Charles's pension benefits.

## Parties

10. Plaintiff Chuck is an individual domiciled in Oregon.

11. Defendant Kenny is an individual domiciled in Butler County, Ohio.

12. Defendant Joann is an individual domiciled in Butler County, Ohio.

13. Defendant Tonja is an individual domiciled in Butler County, Ohio.

14. Upon information and belief, the Pension Fund is a jointly administrated trust fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Reporting Act ("LMRA"), 29 U.S.C. § 186(c)(5). The Pension Fund is an employee benefit plan within the meaning of ERISA Sections 3(2) and 3(3), 29 U.S.C. §§ 1002(2) and (3). The Pension Fund is maintained for the purpose of providing retirement benefits to eligible employees of participating employers, which are paid for through contributions by participating employers. The Pension Fund is also a multiemployer plan within the meaning of ERISA Section 3(37), 29 U.S.C. § 1002(37). The Pension Fund may be sued as an entity, per 29 U.S.C. § 1132(d)(1).

15. The decedent worked for John Morrell & Co. and is an eligible employee in the Pension Fund.

## Jurisdiction

16. This Court has jurisdiction under 29 U.S.C. § 1132(f) and 28 U.S.C. § 1331, as this case poses a beneficiary change dispute involving a plan governed by ERISA.

17. Under 29 U.S.C. § 1132(e)(2), personal jurisdiction for ERISA-related disputes lies in any federal district where the plan is administered so long as defendants have sufficient minimum contacts with the United States. The Pension Fund is administered in the District of Columbia. All defendants have minimum contacts with the United States, since the Individual Defendants reside within the United States, and the Pension Fund is located and administered

within the United States. Additionally, this Court has personal jurisdiction over Individual Defendants because they reside in Ohio, and the Ohio forum transferred the case here after the Individual Defendants had a chance to be heard.

18. Venue is proper under 28 U.S.C. § 1391(b)(2) and Local Rule 82.1(e) because a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia, where the Pension Fund is administered. Venue is proper under ERISA because this is a district "where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).

19. Venue is also proper in this Court because the case was transferred here on December 19, 2023, pursuant to the forum selection clause in the plan documents.

## Facts

20. Charles worked for John Morrell & Co. for decades.

21. In connection with his employment at John Morrell & Co., Charles participated in the ERISA-governed Pension Plan.

22. The Pension Plan gives participants a right to name a beneficiary to receive the participant's monthly payments in the event the participant dies before he received the full number of payments due to him. ERISA defines beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

23. As recently as 2020, Charles confirmed directly to Chuck that Chuck was named as Charles's sole beneficiary with respect to Charles's benefits under the Pension Fund.

24. In or about July 2020 and August 2020, the Pension Fund received a "Benefit Election Form" (the "2020 Form"). On the 2020 Form, Chuck is listed as a primary beneficiary in handwriting that is recognizably Charles's handwriting.

25. Disturbingly, however, the 2020 Form also purports to name Kenny as a beneficiary (herein, the "Kenny designation"). The handwriting listing Kenny as a beneficiary is noticeably different than the handwriting naming Chuck as a beneficiary and is not recognizably Charles's handwriting.

26. Upon information and belief, the designation purportedly naming Kenny as a beneficiary was written by one of the Individual Defendants without the knowledge, consent, or authorization of Charles.

27. At all times relevant to all the claims herein, Individual Defendants were in a relationship with Charles as caregivers.

28. Following medical setbacks, including a stroke, Charles moved in with Kenny, Joann, and Tonja. Charles spent many of his final days in the hospital or in nursing homes, arrangements for which were made by certain or all of Individual Defendants.

29. On occasion, Charles called Chuck and said that Charles believed Kenny and Joann were stealing money out of his bank account. When Chuck asked Kenny and Joann about these comments, Kenny attempted to explain away the accusations by saying that Charles was on pain medication, implying that Charles did not know what he was saying.

30. Beginning in September 2021, Charles was unreachable to Chuck by phone as he had been in the past. Charles's phone stopped going to voicemail when Chuck called him; his number indicated that the phone was no longer in service. Chuck asked Kenny why this was, but Kenny did not respond.

31. Toward the end of 2021, Charles was moved to a different nursing care facility. No one informed Chuck that this change was occurring, despite Chuck's repeated contacts to attempt to connect with Charles and to direct inquires to Individual Defendants about Charles.

32. Kenny was named as agent in a health care power of attorney with Charles as the principal. This, too, placed Kenny and Charles in a fiduciary and confidential relationship.

33. Individual Defendants isolated Charles from Chuck at a time that Charles was dependent on them as his caregivers.

34. On December 5, 2021, Kenny sent a Facebook message to Robin Benetreu—Charles's ex-wife— stating that Charles was sick, that Charles couldn't answer the phone because of pain medication, and that Charles had two strokes and two heart attacks. Kenny stated in this message that Charles was "out" 90% of the time, and that Charles didn't know what he was saying because of the medication—



35. Just five days later, on December 10, 2021, the Pension Fund received another beneficiary designation with respect to Charles's pension benefits (the "2021 Form"). The 2021 Form eliminated Chuck as a beneficiary altogether and named Tonja (the daughter of Kenny and Joann) as the sole beneficiary of Charles's pension benefits (herein, the "Tonja designation").

36. On January 14, 2022, Charles passed away. Individual Defendants did not inform Chuck when this occurred; Chuck learned of his father's passing from Facebook.

37. Upon information and belief—in light of the circumstances regarding Charles's health, his mental faculties (as described by Kenny) which rendered him susceptible to undue influence, Individual Defendants' position of trust, and the timing of the change in beneficiary—Individual Defendants unduly influenced Charles to execute the Tonja designation.

38. Because the change in beneficiary was secured through undue influence and at a time that Charles lacked capacity to make the change, the Tonja designation is legally invalid and void.

39. Given the fraudulent addition of Kenny on the 2020 Form, the Kenny designation is likewise illegitimate. It was Charles's testamentary intent to name only Chuck as a beneficiary of the pension funds.

40. A representative of the Pension Fund has informed Chuck that distributions to Tonja had already begun. Upon information and belief, Tonja has already received distributions from the Pension Fund and may attempt to collect additional distributions that rightfully belong to Chuck.

41. Upon information and belief, distributions from the Pension Fund to Tonja occurred once per month. Thus, the funds that should go to Chuck may be constantly depleted over time.

## Count I
## Undue Influence

42. Chuck incorporates the allegations in the previous paragraphs of the Complaint as if fully restated here.

43. At the time of the Tonja designation, Charles was susceptible to undue influence. He had suffered multiple strokes and multiple heart attacks, and Kenny described Charles as not having his full mental faculties based on the amount of medication Charles was taking.

44. As Charles's caregivers, Individual Defendants were in a fiduciary and confidential relationship with Charles and they had the opportunity to exert undue influence over Charles.

45. As Charles's power of attorney, Kenny owed fiduciary duties to Charles, and this provided him additional opportunities to exert undue influence over Charles.

46. Upon information and belief, and presumptively under Ohio law, Individual Defendants exercised undue influence over Charles. This resulted in the change of beneficiary to Charles's benefits under the Pension Fund, made just five days after Kenny stated that Charles could not understand his own statements because of the medications Charles was taking.

47. The change in beneficiary is presumptively invalid due to Individual Defendants' fiduciary and confidential relationship with and status as caregivers to Charles at the time of the change of beneficiary.

48. As a result, the Court should declare that the Tonja designation is invalid due to Individual Defendants' undue influence.

## Count II
## Lack of Capacity

49. Chuck incorporates the allegations in the previous paragraphs of the Complaint as

if fully restated here.

50. At the time of the change of beneficiary to the Tonja designation, Charles lacked the requisite mental capacity to knowingly and voluntarily change—or to consent to anyone else changing for him—the beneficiary designation.

51. At the time of the change of beneficiary to the Tonja designation, Charles was not able to understand the nature of the business of changing the beneficiary designation, to comprehend generally the nature and extent of his property, to hold in his mind the names and identity of those who have natural claims upon his bounty, and to be able to appreciate his relation to the members of his family.

52. This resulted from, among other things, the heavy medication administered to Charles at the time of the change of beneficiary; as well as Individual Defendants' actions that isolated Charles from his other family members including Chuck.

53. As a result, the Court should declare that the Tonja designation is invalid due to Charles's lack of mental capacity.

## Count III
## Fraud

54. Chuck incorporates the allegations in the previous paragraphs of the Complaint as if fully restated here.

55. Based on the anomalous handwriting on the designation form, the Kenny designation was forged and accomplished without Charles's knowledge, authorization, or consent, in an attempt to take half of the funds that Charles intended to go to Chuck as the sole beneficiary.

56. Given the nature of this secret forgery, Individual Defendants have exclusive

access to information regarding this conduct, such that Chuck cannot describe it with greater particularity.

57. As a result, the Court should declare that the Kenny designation was procured by fraud, is illegitimate, and should be set aside.

## Count IV
## Declaratory Judgment

58. Chuck incorporates the allegations in the previous paragraphs of the Complaint as if fully restated here.

59. There is a genuine case and controversy among the parties about the validity of the Kenny designation and the Tonja designation.

60. Without a declaration from the Court, the Pension Fund will distribute funds to Tonja or Kenny, even though the Kenny designation and Tonja designation are legally invalid.

61. As a result of this substantial controversy, the Court should declare that the Kenny designation and the Tonja designation were invalid, thereby clarifying that Chuck is the sole beneficiary to Charles's pension benefits and the only proper recipient of the distributions.

## Count V
## Constructive Trust

62. Chuck incorporates the allegations in the previous paragraphs of the Complaint as if fully restated here.

63. Upon information and belief, Tonja has already received some distributions from the Pension Fund.

64. Those distributions were wrongfully sent to her instead of Chuck, based on the invalid changes of beneficiary secured through undue influence, as described above.

65. A constructive trust is a trust by operation of law which arises against one who in

11

any way against equity and good conscience, either has obtained or holds the legal right to property which she ought not, in equity and good conscience, hold and enjoy.

66. Any funds already distributed to Tonja or those that are distributed to her after the date of this Complaint, if any, should now be considered to exist in a constructive trust because in equity and good conscience, Tonja should not be permitted to enjoy those funds, or to otherwise dispose of them or render them unavailable to Chuck.

67. The Court should rule that any distributions made to Tonja are to be held in a constructive trust pending the resolution of this case and impose a constructive trust over these distributions.

## Count VI
## Intentional Interference with Expectancy of Inheritance

68. Chuck incorporates the allegations in the previous paragraphs of the Complaint as if fully restated here.

69. Prior to the Individual Defendants' conduct described above, Chuck had an expectancy of inheritance from the Pension Fund as Charles's sole beneficiary.

70. Individual Defendants, through the conduct described above, intentionally interfered with that expectancy through the tortious conduct of undue influence and fraud.

71. But for that interference, Chuck had a reasonable certainty that his expectancy of inheritance would have been realized.

72. Individual Defendants' conduct has damaged Chuck.

73. The Court should find Kenny, Joann, and Tonja liable for their intentional interference with Chuck's expectancy of inheritance, and award Chuck damages.

**Prayer for Relief**

Wherefore, Chuck requests:

1. A declaration that the Tonja designation was secured through undue influence, and was therefore legally invalid;

2. A declaration that the Tonja designation was the product of Charles's lack of capacity, and was therefore legally invalid;

3. A declaration that the Kenny designation was secured through fraudulent forgery, and was therefore legally invalid;

4. A declaration that Chuck is the proper and sole beneficiary for Charles's benefits under the Pension Plan, and that all distributions should be directed to him;

5. An order that any distributions made to Tonja shall be placed under a constructive trust for Chuck's benefit;

6. A judgment that Individual Defendants have intentionally interfered with Chuck's expectancy of inheritance, and make a corresponding award of damages;

7. An order awarding Chuck the reasonable costs incurred in prosecuting this action, including, but not limited to, attorneys' fees; and

8. Any and all other relief in law or equity to which Chuck may be entitled.

## Jury Trial Request

Pursuant to Federal Rule of Civil Procedure 38, Chuck requests a jury trial on any issues triable by jury.

Dated:                                                          Respectfully submitted,

*/s/ Thomas G. Southard*
Thomas G. Southard (975955)
Taft Stettinius & Hollister LLP
200 Massachusetts Ave. NW
Suite 500
Washington, D.C. 20001
T:  (202) 664-1544
F:  (202) 664-1586
tsouthard@taftlaw.com


*/s/ Dominick S. Gerace*
Dominick S. Gerace II (Ohio 0082823)
(*pro hac vice*)
Taft Stettinius & Hollister LLP
435 Walnut St., Ste. 1800
Cincinnati, OH 45202
T:  (513) 381-2838
F:  (513) 381-0205
dgerace@taftlaw.com

*Counsel for Chuck Burdine*

## Verification

I, Chuck Burdine, declare under penalty of perjury under the laws of the United States of America that the facts set forth in the foregoing Complaint are true and correct based on my own knowledge, information, or belief.

*Chuck Burdine* (signature)

Chuck Burdine